UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DENISE YEYE,<br><br>Plaintiff,<br><br>-against-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING; and PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendant. | Civil Action<br>Case No.: 1:25-cv-01790<br><br><br>**COMPLAINT** |

Plaintiff Denise Yeye ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action for damages arising under the Real Estate Settlement Procedures Act ("RESPA") and its implementing Regulation X (12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*), and N.Y. Real Property Law, resulting from the Defendant's failure to respond to Plaintiff's qualified written requests for information related to her mortgage loan account, failure to disclose finance charges and other fees added to Plaintiff's mortgage loan balance, and other practices prohibited by federal and state consumer protection laws.

## **PARTIES**

2.      Plaintiff is an individual and resident of the State of New York, County of Kings.

3.      Defendant Newrez LLC ("Newrez") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 601 Office Center Drive, Suite 100, Fort Washington, Pennsylvania 19034.

4.    Newrez is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000537. Newrez also does business in New York under the trade name Shellpoint Mortgage Servicing ("Shellpoint").

5.    Upon information and belief, Newrez is a wholly owned subsidiary of New Residential Investment Corp. ("New Residential").

6.    Defendant PHH Mortgage Corporation ("PHH") is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 2000 Midlantic Drive, Suite 410-A, Mount Laurel, New Jersey 08054.

7.    PHH is a mortgage loan servicer operating in New York under exempt mortgage loan servicer registration number S000102-2726. PHH also does business in New York using the trade name PHH Mortgage Services.

8.    Upon information and belief, PHH is or was a wholly owned subsidiary of Ocwen Financial Corporation ("Ocwen"), which merged with PHH on or about October 4, 2018, and began conducting its mortgage servicing business under the PHH tradename.

9.    Upon further information and belief, pursuant to a Master Agreement and Transfer Agreement dated on or about July 23, 2017, Ocwen sold its nearly $110 billion portfolio of mortgage loan servicing rights to New Residential, but continued servicing the loans until the servicing rights could be formally transferred.

10.    Upon information and belief, pursuant to a subservicing agreement PHH has been the servicer or subservicer of Plaintiff's mortgage loan account since or about June 2019.

**JURISDICTION**

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

12.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and the mortgaged property underlying Plaintiff's claims is situated in this district.

## STATEMENT OF FACTS

13.    Plaintiff is the owner of real property located at 1856 Prospect Place, Brooklyn, New York 11233 (the "Property").

14.    Plaintiff has maintained the Property as her mailing address for service of notices under the subject mortgage loan documents since its origination.

15.    Plaintiff is the obligor on a mortgage dated January 31, 2007, securing repayment of a loan in the original principal amount of $650,000.00, executed in favor of Option One Mortgage Corporation (the "Mortgage"). The Mortgage was recorded as a lien against the Property on February 7, 2007, under CRFN 2007000072071. A true and correct copy of the recorded Mortgage is annexed hereto as **Exhibit 1**.

16.    On July 19, 2008, a written assignment of mortgage purporting to assign the Mortgage from Option One Mortgage Corporation to Wells Fargo, N.A., as trustee for Option One Loan Trust 2007-4 ("Option One") ("AOM 1"), was recorded on July 24, 2008, under CRFN 1008000295285. A true and correct copy of AOM 1 is annexed hereto as **Exhibit 2**.

17.    Option One is an asset-backed securities trust. It was established through a pooling and servicing agreement among Option One Mortgage Acceptance Corporation, Option One Mortgage Corporation, and Wells Fargo Bank, N.A.

18.    Upon information and belief, Plaintiff's mortgage loan was pooled with other loans and securitized into the trust after origination, and Wells Fargo was designated as the trustee.

19.     Further, public records reflect that another written assignment of mortgage dated August 3, 2012 ("AOM 2"), purporting to assign the Mortgage from Sand Canyon Corporation to Wells Fargo Bank, N.A, in its individual capacity, was recorded on October 1, 2012, under CRFN 2012000388497. A true and correct copy of the recorded AOM 2 is annexed hereto as **Exhibit 3**.

20.     Between AOM 1 and AOM 2, Plaintiff did not receive notice of any servicing transfers related to her Mortgage loan account and, upon information and belief, no such notices were ever sent.

21.     On May 15, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed a Qualified Written Request to Newrez ("Newrez QWR"), seeking information regarding the Mortgage loan account, including an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination. A true and correct copy of Newrez QWR is annexed hereto as **Exhibit 4**.

22.     Because Plaintiff never received notice of any servicing transfers, the Newrez QWR specifically sought copies of all servicing transfer notices, to allow Plaintiff to identify the entities involved in the servicing of her loan and obtain clarity regarding the amounts included in the modified loan balance. The Newrez QWR requested complete loan and escrow histories, and an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination. *See* Ex. 4.

23.     Still in the dark regarding crucial information related to the loan account, on July 15, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed a second QWR, this time directed to subservicer PHH ("PHH QWR"), again seeking servicing information, loan and escrow histories, and an itemization and explanation of fees and other charges added to the loan balance. A true and correct copy of the PHH QWR is annexed hereto as **Exhibit 5**.

24. Neither Newrez nor PHH acknowledged receipt of the QWR, and, to date, they have not provided a written response (or a response of any kind).

25. Defendants failed to provide all communications between servicers and investors, regarding the loan from its inception date to the date of the QWRs and a complete and itemized statement of the payment history from the loan's inception to the QWRs.

26. Nor did they deliver the statements that Plaintiff was entitled to receive. They did not provide statements of all advances and charges against the loan for purposes not reflected in the loan history transaction statement. Neither did they deliver a complete and itemized statement of property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of the QWRs.

27. RESPA requires a servicer, within thirty (30) days of receipt of a QWR from a borrower or his agent, to (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

28. Accordingly, Defendants violated 12 U.S.C. § 2605(e)(2) by failing to conduct a proper investigation regarding Plaintiff's Mortgage loan account.

29. Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting a proper investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. § 1024.36.

30. Additionally, 12 C.F.R. § 1024.35(b) of Regulation X lists eleven categories of "covered errors" under Regulation X including: (i) failure to properly accept and apply payments; (ii) failure to accurately credit payments on the date received; (iii) failure to timely pay taxes, insurance premiums, and other charges; (iv) imposing improper fees or charges; (v) failure to timely and accurately transfer servicing information to a transferee servicer; and (vi) "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b).

31. Defendants' failure to disclose the entire information requested in the QWR not only undermines Plaintiff's ability to understand her Mortgage, but also directly violates the statutory requirement to fully inform borrowers about their accounts. This failure constitutes a breach of RESPA's core purpose, which is to promote transparency and protect consumers from abusive practices in mortgage servicing.

32. Each Defendant's refusal to adhere to required servicing practices, including failing to provide Plaintiff with notices of servicing transfers and other account information, and failing to acknowledge or respond to two separate QWRs, establishes a pattern and practice of noncompliance.

33. This pattern and practice of noncompliance is evidenced by past lawsuits and regulatory actions taken against Defendants and its affiliates for similar unlawful practices and violations of consumer protection laws. For example:

   a. In 2014, the CFPB acted against PHH Corporation for violations of the Real Estate Settlement Procedures Act (RESPA), alleging that PHH engaged in a kickback scheme related to mortgage insurance. The CFPB claims that PHH, either directly or through its affiliates, referred to mortgage insurance business in exchange for unlawful payments, leading to inflated costs for consumers. In a decision issued by CFPB Director Richard Cordray, the Bureau ruled that PHH's practices harmed consumers and disrupted market integrity. Further, the CFPB issued a final order that required PHH to disgorge $109 million regarding all the reinsurance premiums it obtained improperly on or after July 21, 2008, and barred PHH from violating the provision of RESPA that forbids kickbacks.

b. PHH was also subject of a 2018 lawsuit filed in the U.S. District Court for the District of Columbia, under Case No. 1:18-cv-00009, in which the attorneys general of 49 states and the District of Columbia alleged that PHH, individually or through its affiliates or subsidiaries, violated state and federal consumer protection laws by failing to correctly apply payments, charging unauthorized fees, failing to maintain proper records, and failing to properly oversee third-party vendors, among other things. The lawsuit resulted in a consent judgment filed on January 3, 2018, wherein PHH agreed to pay more than $45 million in consumer redress, administrative penalties, and other penalties.

c. Upon information and belief, Newrez's parent company, New Residential, acquired the servicing rights for the full $110 billion mortgage servicing portfolio of Ocwen, d/b/a PHH.

d. In 2017, the Consumer Financial Protection Bureau ("CFPB") sued Ocwen and its subsidiaries "for failing borrowers at every stage of the mortgage servicing process." *See* CFPB Press Release dated April 20, 2017, accessible at https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-ocwen-failing-borrowers-throughout-mortgage-servicing-process/. The CFPB "uncovered substantial evidence that Ocwen has engaged in significant and systemic misconduct at nearly every stage of the mortgage servicing process," and alleged that

e. Additionally, PHH was named in a class action lawsuit filed in the U.S. District Court for the District of Massachusetts on April 21, 2023, under Case No. 1:23-cv-10857, which alleges that among others, PHH "fail[ed] to adequately respond to borrowers' requests for account information," and refused to produce information like recordings and transcripts of conversations for "hundreds if not thousands of consumers that have requested them."

34. Given the documented histories of regulatory enforcement and consumer protection law violations regarding operational servicing duties in connection with mortgage servicing rights, the types of servicing errors and statutory violations described herein reflect irregular consumer-oriented conduct with a broader impact on consumers at large.

**<u>VIOLATIONS OF RESPA AND REGULATION X</u>**
**(12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*)**

35. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

36.    RESPA (12 U.S.C. § 2601, *et seq.*) is a federal consumer protection statute which, along with its implementing regulations, imposes certain duties on lenders and servicers related to the real estate settlement process and servicing of mortgage loans, and provides a framework for borrowers to investigate and remedy servicing and account errors. RESPA's primary purpose is to prevent abusive practices and safeguard the interests of consumers, in what are often the most significant financial transactions of their lives.

37.    Regulation X (12 C.F.R. § 1024.1, *et seq.*) is RESPA's implementing regulation. RESPA expressly authorizes the CFPB "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." *See* 12 U.S.C. § 2617(a). It dictates the precise responsibilities of the mortgage servicer, particularly concerning borrower communications.

38.    RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

39.    Plaintiff is a "person" as defined by RESPA. *See* 12 U.S.C. § 2602(5).

40.    Defendants are "servicers" of Plaintiff's loan, as defined by RESPA and Regulation X. *See* 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2.

41.    Plaintiff entered a "federally related mortgage loan" as defined by RESPA. *See* 12 U.S.C. § 2602(1).

**<u>COUNT I</u>**
**Failure to Respond to Borrower Inquiries**
**(12 U.S.C. §§ 2605(e), 2605(f) and 12 C.F.R. §§ 1024.35, 1024.36)**

42.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43. Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR.

44. A QWR is defined as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

45. RESPA requires a servicer, within thirty (30) days of receipt of a QWR from a borrower or his agent, to (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

46. Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, investigating, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. §§ 1024.35, 1024.36.

47. For purposes of Regulation X, "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a).

48. Section 1024.35(b) lists eleven categories of "covered errors" under Regulation X including: (i) failure to properly accept and apply payments; (ii) failure to accurately credit payments on the date received; (iii) failure to timely pay taxes, insurance premiums, and other charges; (iv) imposing improper fees or charges; and (v) "any other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b).

49. Moreover, Regulation X dictates that "a servicer must respond to information request by either (…) providing the borrower with the requested information, including a telephone number, for further assistance in writing; or conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the request information is not available to the servicer." *See* 12 C.F.R. § 1024.36(d)(1).

50. Defendants' failure to disclose the entire information requested in the QWR violates 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k). By withholding or omitting important information, the servicer impedes the borrowers' ability to understand their mortgage obligations, identify potential errors, and take necessary corrective actions. This lack of transparency can lead to further financial harm, such as unwarranted fees, incorrect interest calculations, or even wrongful foreclosure actions.

51. Defendants' refusal to disclose Plaintiff's account history, or to explain any fees added to the loan balance, also indicates that Defendants made additional, more egregious servicing errors and/or failed to transfer or obtain complete and accurate information regarding Plaintiff's account.

52. RESPA also requires a servicer who receives a QWR to "provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays,

Saturdays, and Sundays) unless the action requested it taken within such period." 12 U.S.C. § 2605(e)(1)(A).

53.     Failure to acknowledge or respond to a QWR, including a borrower's request for account and payment information, is a covered "error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b)(11).

54.     Newrez and PHH failed to acknowledge receipt of the QWRs and further failed to investigate or to provide Plaintiff with a written response to the QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k).

55.     Failure to respond to Plaintiff's QWRs has significant implications for Plaintiff, impeding her ability to identify potential account or servicing errors, and to seek necessary corrective actions. This lack of transparency, and PPH's failure to comply with these requirements, deprives Plaintiff of the opportunity to exercise her rights effectively.

56.     Specifically, Defendants' refusal to provide Plaintiff with critical account information allowing her to identify and seek correction of account errors, and their refusal to independently investigate Plaintiff's account to identify and correct errors in response to the QWRs, means that improper fees – and the interest accruing on the increased loan balance as a result of these fees – continue to accumulate on Plaintiff's account and cause additional harm on an ongoing basis.

57.     As a result of Defendants' actions and failure to investigate or respond to Plaintiff's QWRs, including Defendants' failure to correct servicing and account errors that resulted in improper fees, interest, and other charges being added to her loan balance, Plaintiff was forced to incur attorneys' fees to compel responses, and has suffered actual damages. These actual damages include, but are not limited to, increased debt and financial burden resulting from improperly

imposed fees, interest, and other charges added to her loan balance, continually accruing interest on any such improper Capitalized Sums, payment of attorneys' fees and other professional retainer costs, emotional distress, and other actual damages.

58.     Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3).

59.     Defendants have also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, entitling Plaintiff to additional statutory damages of up to $2,000.00 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B), for each QWR, notice of error, and request for information Defendants failed to properly investigate and respond to.

### COUNT II
**Failure to Provide Required Notices**
**(12 U.S.C. §§ 2605(b), 2605(c) and 12 C.F.R. § 1024.33)**

60.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

61.     RESPA and Regulation X each require a servicer to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1); *see also* 12 C.F.R. § 1024.33(b)(1).

62.     RESPA and Regulation X also detail specific requirements concerning the timing and content of servicing transfer notices. *See* 12 U.S.C. §§ 2605(b), (c); 12 C.F.R. § 1024.33.

63.     As Plaintiff's loan servicers, Defendants have a duty to provide Plaintiff with timely written notice of any servicing transfer.

64. Defendants failed to provide Plaintiff with notice of servicing transfers in violation of 12 U.S.C. §§ 2605(b) and 2605(c), and 12 C.F.R. § 1024.33, thereby preventing Plaintiff from being able to obtain and confirm critical account information, or to correct account errors including the continued accrual of improper fees – and the interest accruing on the increased loan balance as a result of these fees – on Plaintiff's account, which are causing additional harm on an ongoing basis.

65. As a result of Defendants' actions including failure to provide notice of servicing transfers and preventing Plaintiff from correcting servicing and account errors that resulted in improper fees, interest, and other charges being added to her loan balance, Plaintiff was forced to incur attorneys' fees to compel disclosure and has suffered actual damages. These actual damages include, but are not limited to, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance, continually accruing interest in any such improper capitalized sums, payment of attorneys' fees and other professional retainer costs, emotional distress, and other actual damages.

66. Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with attorneys' fees and costs incurred in connection with this action pursuant to 12 U.S.C. § 2605(f)(3).

67. Defendants have also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, entitling Plaintiff to additional statutory damages of up to $2,000.00 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B).

**STATE LAW CLAIMS**

**COUNT III**
**Accounting**

68.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

69.     Section 419.4 of the Superintendent's Regulations require servicers to provide borrowers with (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances containing specific information and meeting certain requirements. *See* 3 N.Y.C.R.R. §§ 419.4(a)-(d).

70.     Defendants have failed and refused to provide any information regarding Plaintiff's Mortgage loan account in response to the QWRs. In fact, it failed and refused to respond to Plaintiff's QWRs at all.

71.     Upon information and belief, Defendants added improper fees and charges to Plaintiff's account, and failed to maintain and/or transfer complete and accurate servicing records as required.

72.      In order to accurately determine the sum and extent of the servicing errors and improper charges added to Plaintiff's account, Defendant must provide a full accounting of all transactions and calculations involving the loan account including, but not limited to, all credits, debits, payments, disbursements, interest (including rates and changes), fees, charges, and balances.

73.     The accounting should include, for all time periods since origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d).

74.    The information necessary to conduct this accounting is solely within the Servicer Defendants' possession, custody, and control.

75.    Plaintiff has no adequate remedy at law, and no other means by which to obtain this information.

76.    Accordingly, Plaintiff seeks an accounting of the entire loan history, from origination to present.

### DEMAND FOR JURY TRIAL

77.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, the Plaintiffs respectfully demand judgment awarding all actual, statutory, and/or punitive damages, equitable relief, and other relief available pursuant to applicable law.

Dated: Brooklyn, New York
        April 1, 2025

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Denise Yeye

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq. (ID No. SP9522)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com

## <u>SUMMARY OF EXHIBITS</u>

**Exhibit 1** – Mortgage dated January 31, 2007

**Exhibit 2** – Assignment of Mortgage dated July 19, 2008

**Exhibit 3** – Assignment of Mortgage dated August 3, 2012

**Exhibit 4** – QWR to Newrez dated May 15, 2024

**Exhibit 5** – QWR to PHH dated July 15, 2024